# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**STEVEN JAMIL WILLIAMS**                                    **CIVIL ACTION**

**VERSUS**                                                    **NO. 14-2417-DEK**

**MARLIN GUSMAN, SHERIFF,**
**ORLEANS PARISH, ET AL.**

## ORDER AND REASONS

Plaintiff, Steven Jamil Williams, a state prisoner, filed the instant civil action pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, Deputy Troy Phares, Deputy Yang, Deputy Ruiz, Deputy Holmes, and Nurse Mackie. In this lawsuit, plaintiff claimed that the defendants failed to protect him from an attack by another inmate and then also failed to provide him with adequate medical care for his resulting injuries. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Plaintiff has opposed that motion.[3]

---

[1] Rec. Doc. 18.

[2] Rec. Doc. 30.

[3] Rec. Doc. 34.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In his detailed complaint, plaintiff set forth the following allegations. While incarcerated within the Orleans Parish Prison system on the night of October 21, 2013, plaintiff was threatened by inmate Rene Knockum. Specifically, after a verbal altercation between the two men, Knockum told plaintiff he would "whip his ass" and "stick his finger up [plaintiff's] ass."[4] Shortly thereafter, plaintiff "told [Deputy Troy Phares] that I needed to check off the tier." Phares asked, "Are you serious?" After plaintiff responded that he was serious, Phares simply walked away. After Phares left, Knockum physically and sexually assaulted plaintiff. Knockum and other inmates then threatened plaintiff with further violence if he reported the incident. As a result, he did not report the attack to Phares that night.[5]

The following day, however, plaintiff repeatedly reported the incident. He first reported it in a note he passed to Nurse Mackie during "pill call" at approximately 11:00 a.m. When no help arrived, he then reported it to Deputy Yang at approximately 2:30 p.m. and then again at 4:00 p.m., but he still received no assistance.[6] When he requested assistance from Deputy Yang for a third time at approximately 5:00 p.m., plaintiff was finally taken to the "watch office" to meet with Deputies Ruiz and Holmes. After he told them what had occurred, he was sent to the nurse's office. Plaintiff also subsequently made reports to Detectives Harris and Bowser and Chief Weaver.[7]

---

[4]  Rec. Doc. 4-1, p. 2.

[5]  Rec. Doc. 4, p. 7.

[6]  Rec. Doc. 4, pp. 8-9.

[7]  Rec. Doc. 4, p. 10.

3

Thereafter, plaintiff was transferred to another area of the jail, he saw a "PREA (Prison Rape Elimination Act) social worker" once a week for four or five months, and Knockum was charged with the criminal offense of sexual battery based on the attack.[8]

In their motion, the defendants first argue that plaintiff's claims should be dismissed as prescribed. They correctly note that plaintiff had only one year after his claims accrued in which to bring suit under 42 U.S.C. § 1983. See Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998) ("[F]or a § 1983 action, the court looks to the forum state's personal-injury limitations period. In Louisiana, that period is one year." (citation omitted)); see also Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002); Smith v. Orleans Parish Prison, Civ. Action No. 08-3786, 2008 WL 2951279, at *1 (E.D. La. July 25, 2008). They further note that plaintiff's lawsuit is based on an incident which occurred on October 21, 2013, and that petitioner's first deficient complaint was not docketed by this Court until October 27, 2014, more than one year later.

"[A] defendant moving for summary judgment on the affirmative defense of limitations must prove that defense conclusively." Janvey v. Democratic Senatorial Campaign Committee, Inc., 712 F.3d 185, 193 (5th Cir. 2013); accord Frame v. City of Arlington, 657 F.3d 215, 239-40 (5th Cir. 2011) ("[T]he statute of limitations is an affirmative defense that places the burden of proof on the party pleading it. Under federal pleading requirements, which we follow, a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations." (footnotes and quotation marks omitted)). Because the defendants have failed to take into account the two

---

[8] Rec. Doc. 4, p. 11.

following special rules which apply in cases filed by prisoners, they have failed to conclusively prove that plaintiff's complaint is untimely.

First, the "filing date" of a prisoner's *pro se* complaint is not the date on which it is received or docketed by the Clerk of Court; rather, such a complaint is considered "filed" *when it is given to the prison authorities for mailing* to the Clerk of Court. Cooper v. Brookshire, 70 F.3d 377, 378 (5th Cir. 1995). The defendants have provided no evidence as to when plaintiff's complaint was given to prison authorities. Without such evidence, the defendants have not established that the complaint was untimely filed.

Second, because a prisoner is required to exhaust his administrative remedies prior to seeking relief in federal court, his limitations period for filing a lawsuit is *tolled* while he is pursuing an administrative grievance concerning his claims. Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999). In his complaint, plaintiff states that he in fact submitted an administrative grievance with respect to his claims.[9] Because the defendants have failed to provide evidence concerning how long that grievance was pending and the limitations period remained tolled, they have not established that plaintiff's federal complaint was untimely.

For these reasons, the defendants have failed to meet their burden of proof with respect to the limitations defense, and that defense is therefore rejected.

The defendants next argue that plaintiff's claims fail on the merits. On that point, the defendants are correct.

---

[9] Rec. Doc. 4, p. 2. Factual assertions in a prisoner's verified complaint made under penalty of perjury constitute competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003).

As noted, plaintiff first claims that Deputy Phares failed to protect him from violence at the hands of Rene Knockum.[10] It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). However, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

---

[10] The discussion above addresses only the failure-to-protect claim against Phares. The Court notes that plaintiff appears to also include Deputies Yang, Holmes, and Ruiz as defendants with respect to this claim. See, e.g., Rec. Doc. 4, p. 6. However, the only defendant alleged in the complaint to have had prior warning of the threats was Phares, and plaintiff admitted in his deposition that Phares was the only person he notified of the threats prior to the incident. Rec. Doc. 30-4, pp. 8 and 18-22. Although plaintiff faults Yang, Ruiz, and Holmes from not *removing him* from the dorm immediately *after* learning of the attack, plaintiff has no viable failure-to-protect claim against those defendants for their inaction because he was not further harmed on the dorm. Cf. Winding v. Sparkman, 423 Fed. App'x 473 (5th Cir. 2011) (a prisoner who does not allege any resulting physical injury fails to state an actionable failure-to-protect claim). Lastly, although plaintiff seeks to hold Sheriff Gusman liable in a related claim based on his purported failings as supervisor, that claim fails for the reasons discussed *infra*.

With respect to the failure-to-protect claim, plaintiff and Phares recall the underlying incident slightly differently. For his part, plaintiff states in the complaint that (1) he went to Phares and "told him that I needed to check off the tier," (2) Phares asked if plaintiff was serious, (3) plaintiff responded that he was serious, and (4) Phares walked away.[11] In other parts of the complaint, plaintiff clarifies that he also informed Phares of Knockum's threats.[12] However, in his affidavit submitted in connection with the motion for summary judgment, Phares states:

> 3. On [October 21, 2013], while conducting routine rounds in Orleans Parish Prison dorm B-3, after 10:30 P.M., [Deputy Phares] was approached by inmate Steven Williams who, in full view of the other inmates on the tier, asked if he could leave the tier.
>
> 4. Inmate Williams did not provide any additional details, context, or information in his question to Deputy Phares. He did not state why he wanted to leave the tier, nor did inmate Williams claim to have been threatened by, or fearful of, other inmate(s) on the tier.
>
> 5. In response to inmate Williams' question, Deputy Phares replied in the affirmative.
>
> 6. After giving no follow up comment, response, or taking any other action after Deputy Phares told the inmate he could check off the tier, inmate Williams returned to the open dorm area with the other inmates.
>
> 7. After Williams returned to the open dorm area, Deputy Phares finished his security check, and did not see or hear from inmate Williams again for the rest of his shift, which ended at 6:30 A.M.
>
> 8. The entire exchange with inmate Williams lasted no more than ten seconds.
>
> 9. During this exchange inmate Williams did not display any observable signs of fear, anxiety, nervousness or otherwise indicate distress.

---

[11]   Rec. Doc. 4, p. 7.

[12]   Rec. Doc. 4-1, pp. 2 and 5.

7

10. Prior to this incident, Deputy Phares had undergone corrections officer training, Orleans Parish Sheriff Office policy and procedure training, and had been acting as a tier deputy for over a year.

11. Based on Deputy Phares' training and experience, inmate Williams' generalized request to leave the tier without explanation, the brief length of the conversation, inmate Williams' demeanor and body language during the conversation, inmate Williams' lack of follow-up communication or attempts to act on the approval given, and the fact that inmate Williams left the area by Deputy Phares to return to the open dorm with the other inmates, Deputy Phares did not think that inmate Williams was in any danger.

12. Prior to inmate Williams' altercation with another inmate, Deputy Phares did not know that the plaintiff would be involved in an altercation, nor did he infer that inmate Williams was at any risk of harm based on the facts and circumstances of their brief interaction.[13]

Although there is obviously disagreement as to whether or not plaintiff actually informed Phares of Knockum's threats, that factual dispute is ultimately immaterial. As explained above, it is insufficient for plaintiff to show merely that Phares was aware of facts from which the *inference could be drawn* that a substantial risk of serious harm existed; rather, in order to prove his claim, *plaintiff must also show that Phares in fact drew that inference.* See Neals, 59 F.3d at 533. Phares stated in his affidavit that he did not draw that inference. Because plaintiff has offered no evidence whatsoever to rebut Phares' evidence that he did not draw the inference, and because the circumstances of Phares's brief interaction with plaintiff provide an insufficient basis for a trier of fact to conclude that a substantial risk of harm was so obvious that Phares must have drawn the inference, Phares is entitled to summary judgment in his favor. See, e.g., Texaco, Inc. v. Duhe, 274 F.3d 911, 915 (5th Cir. 2001) ("If a party fails to make a showing sufficient to establish the existence of an

---

[13] Rec. Doc. 30-6.

8

element essential to that party's case and on which that party bears the burden of proof at trial, there ceases to be a genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law."). Accordingly, plaintiff's failure-to-protect claim must be dismissed.

Plaintiff's second claim is that the defendants failed to provide him with adequate medical care for physical and emotional injuries he sustained in the attack by Knockum. As an initial matter, it must be noted that an inmate's right to medical care under the United States Constitution is extremely limited. Specifically, regardless of whether he is a pretrial detainee or a convicted prisoner, his constitutional right to medical care is violated *only* if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Even if plaintiff could show that his medical needs were sufficiently serious to support a constitutional claim, which is an issue the defendants do not address in their motion, plaintiff cannot establish that those needs were met with deliberate indifference. Regarding the "deliberate difference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and

wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, there is no evidence that any defendant ignored plaintiff's physical or mental health complaints or refused to provide him with care. On the contrary, according to plaintiff's federal complaint, he (1) first reported the incident on October 22, 2013,[14] (2) was sent to the nurse's office that same day,[15] and (3) was seen by Ms. Mann, a "PREA (Prison Rape Elimination Act) social worker," once a week for four or five months.[16] Moreover, in his deposition, plaintiff stated that he was given "some Tylenol" after the attack because his jaw was "hurting" and "a little swollen,"[17] and he acknowledged seeing other social workers in addition to Ms. Mann and a "mental health doctor."[18] There is likewise no evidence that any defendant intentionally treated plaintiff incorrectly or engaged in any similar misconduct.

On the contrary, it is evident that the crux of plaintiff's claim is merely that he believes that he should have been provided with *more* care, such as mental health treatment at a hospital.[19] However, a prisoner's disagreement with his medical treatment is not evidence of deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Further, "the question of

---

[14] Rec. Doc. 4, p. 7.

[15] Rec. Doc. 4, p. 10.

[16] Rec. Doc. 4, p. 11.

[17] Rec. Doc. 30-4, p. 11. Plaintiff explained that he was punched in the face twice during the attack. Rec. Doc. 30-4, p. 4.

[18] Rec. Doc. 30-4, pp. 14-16.

[19] See, e.g., Rec. Doc. 4-1, p. 6; Rec. Doc. 30-4, p. 12.

whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Therefore, federal courts are generally loath to second-guess medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). Plaintiff has provided no basis whatsoever for such second-guessing in this case.

This is true even if the medical and mental health treatment plaintiff received was in fact subpar in some respect. The federal constitution simply does not require that inmates receive optimal care, and the fact that an inmate's treatment "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Indeed, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).

For all of these reasons, the Court finds that the defendants are entitled to judgment as a matter of law on the claim that they were deliberately indifferent to plaintiff's serious medical needs.

The defendants next argue that plaintiff's claims against Sheriff Gusman must be dismissed. Again, they are correct. It is true that an official may be held liable in his individual capacity for his actions in failing to properly supervise or train his subordinates, and plaintiff indicates that he is asserting such a claim. However, that claim necessarily fails in light of the foregoing findings that there was no underlying constitutional violation in this case. See, e.g., Whitley v. Hanna, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."), cert. denied, 134 S. Ct. 1935 (2014); Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2014 WL 7139636, at *5 (E.D. La. Dec. 15, 2014); Wallack v. Jackson County, Mississippi, Civil Action No. 1:13cv103, 2014 WL 2154202, at *8 (S.D. Miss. May 22, 2014); Kennedy v. City of Shreveport, Civ. Action No. 07-1049, 2008 WL 2437043, at *6 (W.D. La. June 13, 2008).

Similarly, to the extent that plaintiff is asserting official-capacity claims against the defendants, those claims must likewise be dismissed. Because, again, there was no underlying constitutional violation in this case, any official-capacity claims necessarily fail. See, e.g., Royal v. Spragins, 575 Fed. App'x 300, 305 (5th Cir. 2014); Billizone, 2014 WL 7139636, at *5.

Lastly, plaintiff indicates in his complaint that he is also asserting claims under state law. However, the Court declines to consider any such state law claims in light of the fact that plaintiff's federal claims must be dismissed for the reasons already discussed. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the

12

district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").  If plaintiff wishes to pursue claims under state law, he must do so in the state courts.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment, Rec. Doc. 30, is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's federal civil rights claims are **DISMISSED WITH PREJUDICE** and that his state law claims are **DISMISSED WITHOUT PREJUDICE** to their being asserted in the state courts.

New Orleans, Louisiana, this thirteenth day of August, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**